COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RAFAEL DE LOS SANTOS, | § | No. 08-14-00099-CR |
| Appellant, | § | |
| | § | Appeal from |
| v. | § | |
| | § | Criminal Court No. 3 |
| THE STATE OF TEXAS, | § | of Denton County, Texas |
| Appellee. | § | (TC# 2013-02826-C) |

# **O P I N I O N**

Appellant, Rafael De Los Santos, was found guilty by a jury of Driving While Intoxicated (DWI) with an Open Container of Alcohol.[1]   Appellant was sentenced to 160 days in jail, probated for 14 months. Appellant raises five points of error on appeal.[2]  We affirm.

## **BACKGROUND**

On February 28, 2013 at around 8:30 p.m., Appellant was driving his 2002 white Escalade on I-35 South in the northbound lanes in Lewisville, Denton County, Texas.   Another driver on

---

[1]  Appellant pled true to the DWI enhancement of open container of alcohol.

[2]  We hear this case on transfer from the 2nd Court of Appeals and apply that court's precedent to the extent required by TEX.R.APP. P. 41.3.

the road, Anthony Marcello, observed that Appellant was varying his speed, swerving, failing to maintain a single lane, and almost struck two other vehicles. Marcello called 911 to report Appellant's erratic driving.

Throughout Marcello's phone conversation with the 911 dispatcher, he provided the exact location and real-time updates of his and Appellant's location. Marcello gave the dispatcher a detailed description of the vehicle Appellant was driving, and specifically described how Appellant was operating the vehicle. In response to Marcello's 911 call, Lewisville Police Department officers were dispatched. Officer Anderson Rock was the first officer to spot Appellant's vehicle on the northbound frontage road on the FM 407 bridge. After observing Appellant failed to signal his intent to turn left at the intersection of FM 407 and Lake Park, Officer Rock initiated a traffic stop. Appellant pulled over at a nearby Walmart parking lot once Officer Rock's overhead lights were activated. Officer Matthew Bender arrived shortly after Officer Rock. Both officers approached Appellant on the driver's side door. Appellant was the sole occupant of the vehicle. Officer Bender proceeded to speak with Appellant observing his eyes were red and glassy, his breath had a strong odor of an alcoholic beverage, and he had a Solo cup in the center console with an empty Bacardi bottle next to it. Officer Bender asked Appellant if he had anything to drink that night, and Appellant responded alternatively that he had a bottle and a half of Bacardi rum and coke; a cup and a half of rum and coke; or half a pint of Bacardi rum.

Officer Jeffery Persinger arrived at the scene shortly after the stop of Appellant. Officer Persinger is assigned to a specialized unit dedicated to driving while intoxicated (DWI) cases. Officers Bender and Rock turned the investigation over to Persinger. After updating Officer Persinger regarding their observations, they remained at the scene as backup officers.

2

When Officer Persinger approached the Appellant, he observed Appellant had red glassy eyes, an odor of alcohol on his breath and person, and swayed while standing. Appellant informed Officer Persinger he had been drinking rum and coke. While Appellant's first language is Spanish, all officers testified Appellant was responsive to their questions in English and understood what was asked of him. Further, on the video recording of the stop, Appellant clearly told the officers that if they spoke English slowly, "[he] could understand 100%."

Based on Officer Persinger's observations and the information relayed to him, he initiated a DWI investigation. The National Highway Traffic Safety Administration (NHTSA) provides three standardized field sobriety tests: (1) the Horizontal Gaze Nystagmus (HGN); (2) the Walk and Turn; and (3) the One Leg Stand. Officer Persinger conducted all three of the field sobriety tests following the NHTSA protocol. Officer Persinger began by administering the HGN test to Appellant. On a HGN test, an individual that exhibits four out of the six clues of the test is considered intoxicated. Officer Persinger testified that Appellant exhibited six clues. Next, Officer Persinger requested Appellant perform the Walk and Turn test. In the Walk and Turn test, two out of eight clues indicate intoxication. After Officer Persinger explained and demonstrated the instructions to Appellant, Officer Persinger observed Appellant display seven out of eight clues. Finally, Officer Persinger demonstrated and administered the One Leg Stand. In the One Leg Stand test, two clues or more out of four clues indicate intoxication. Appellant exhibited three clues in the One Leg Stand test.

As the result of Appellant's performance in the field sobriety tests, Officer Persinger placed Appellant under arrest for driving while intoxicated. Officer Persinger placed Appellant in the backseat of his patrol car, provided him with a copy of the DIC-24 statutory warning, and played

3

the Spanish version of the Law Enforcement Advanced DWI Reporting System (LEADRS) DIC-24 audio. After playing Appellant the DIC-24 warning in the LEADRS approved Spanish audio file, he played two more audio files, which asked Appellant if he would consent to provide a specimen of his breath or blood. Appellant refused to provide a specimen of his breath or blood. Appellant was then taken to the Lewisville jail. On July 11, 2013, Appellant filed a motion to suppress the evidence obtained as the result of the DWI investigation and arrest. Appellant requested a pretrial hearing on the motion to suppress. However, at the final pretrial hearing on the day of trial, Appellant agreed the motion to suppress would run with the trial. At trial, the judge denied Appellant's motion to suppress. During the charge conference, Appellant requested additional instructions in the jury charge. The trial court denied Appellant's request. The jury found Appellant guilty of DWI.

## DISCUSSION

Appellant raises five points of error on appeal. First, whether the evidence was legally sufficient. Next, whether the court erred in denying the motion to suppress the evidence because: (1) the stop of Appellant was pretextual; and (2) Appellant's arrest was illegal due to the lack of probable cause. Fourth, Appellant was denied due process when the trial court refused to hear the suppression motion prior to trial. Finally, the court erred in failing to charge the jury with the issues in his motion to suppress.

### I.    Legal Sufficiency

In Point of Error One, Appellant contends the evidence is legally insufficient to support his conviction of DWI. Appellant asserts the evidence is insufficient because there was no "blood drawn nor was there [a] breathalyzer [test]," that showed Appellant was intoxicated. Moreover,

4

Appellant alleges his failure to pass the field sobriety tests was due to his inability to comprehend English, rather than the result of intoxication.

*Standard of Review*

The due process clause of the 5th and 14th amendments of the U.S. Constitution requires the State to prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(determining that *Jackson* standard "is the only standard that a reviewing court should apply" when examining sufficiency of evidence). The critical inquiry in a sufficiency of the evidence challenge is to determine whether the evidence in the record could reasonably support a conviction of guilt beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007). When we face a sufficiency of the evidence challenge, we review all trial evidence "in the light most favorable to the verdict," to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* This standard accounts for the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* We consider "all of the evidence," this includes direct or circumstantial, properly or improperly admitted. *Id.* It is not necessary that every single fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

In a legal sufficiency review, it is not the role of this Court to sit as a thirteenth juror. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). We will not reevaluate the weight

5

and credibility of the evidence and substitute our judgment for that of the trier of fact, and we generally defer to the jury's verdict when the record evidence paints conflicting theories of innocence and guilt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010); *Goodman v. State*, 66 S.W.3d 283, 286 n.4 (Tex.Crim.App. 2001). Our role in a legal sufficiency review is to "act as a procedural failsafe against irrational verdicts," and we may reverse a conviction where no rational juror could find guilt beyond a reasonable doubt based on the evidence presented at trial. *Clayton*, 235 S.W.3d at 778. We may reverse in situations in which the State has failed to prove an element of the crime as a matter of law and situations in which there is evidence for every single element of the offense, but not enough for a reasonable person to convict considering the state of the evidence, even when viewed most favorably to the prosecution. *See Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789 (constitutional legal sufficiency standard in criminal cases higher than "mere modicum" evidence standard); *Brooks*, 323 S.W.3d at 906-07.

*Applicable Law*

To sustain a conviction of DWI, the State must prove that the accused was intoxicated while operating a motor vehicle in a public place. TEX.PENAL CODE ANN. § 49.04 (West Supp. 2017). A public place is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX.PENAL CODE ANN. § 1.07(a)(40)(West Supp. 2017). A motor vehicle is defined as "a device in, on, or by which a person or property is or may be transported or drawn on a highway, except a device used exclusively on stationary rails or tracks." TEX.PENAL CODE ANN. § 49.01(3); TEX.PENAL CODE ANN. § 32.34(a)(2)(West 2016).

6

The State can prove intoxication by showing either loss of the "normal use of mental or physical faculties" due to the introduction of alcohol, or an alcohol concentration at or above 0.08 at the time of driving.  TEX.PENAL CODE ANN. § 49.01(2)(A), (B)(West 2011).  Intoxicated is defined as not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances, or any other substance into the body.  TEX.PENAL CODE ANN. § 49.01.  In this case, the State chose to pursue the loss of the normal use of physical or mental faculties, better known as the "impairment theory."  *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex.Crim.App. 2010).  Under this theory, the State is required to prove Appellant did not have the normal use of his mental or physical faculties "by reason of the introduction" of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any substance.  *See* TEX.PENAL CODE ANN. § 49.01(2)(A); *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex.Crim.App. 2010).  Proving an exact substance is not an element of the offense; instead, the substance alleged to have caused intoxication is an evidentiary matter which may be proved by circumstantial evidence.  *Crouse v. State*, 441 S.W.3d 508, 513 (Tex.App.--Dallas 2014, no pet.).

If the person operating the motor vehicle, at the time of the offense, had an open container of alcohol in the person's immediate possession, the misdemeanor Class B offense of DWI is enhanced to a minimum confinement of six days from a minimum confinement of 72 hours.  TEX.PENAL CODE ANN § 49.04(b), (c)(West Supp. 2017).  The statute does not define "immediate possession" nor "open container," and courts have held that both have their plain and ordinary meaning.  *Scharbrough v. State*, 732 S.W.2d 445, 447-48 (Tex.App.--Fort Worth 1987, pet. ref'd).  Immediate possession means that the open container is within the reach of the person

7

operating the motor vehicle. *Troff v. State*, 882 S.W.2d 905, 909 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd). To prove the presence of an open container, the record must show that there was a container of alcohol, and the container was open. *Reynosa v. State*, 996 S.W.2d 238, 241 (Tex.App.--Houston [1st Dist.] 1999, no pet.).

*Analysis*

Viewed in the light most favorable to the verdict, the State proved beyond a reasonable doubt that on February 28, 2013, Appellant was operating a motor vehicle in a public place while intoxicated with an open container. Officer Rock testified he first spotted a white 2002 Cadillac Escalade SUV at the intersection of Lake Park and FM407. Officer Rock initiated a traffic stop after he observed Appellant failed to signal a turn at the intersection. Appellant pulled over into a nearby Walmart parking lot in Lewisville. Officer Persinger testified that a Cadillac Escalade is a motor vehicle and Appellant was stopped in a public place in Denton County, Texas. Both Officers Rock and Bender testified Appellant was the sole occupant of the vehicle, and behind the wheel. Further, Appellant admitted to Officer Persinger he was driving.

The State presented ample evidence for a reasonable jury to find Appellant was intoxicated. Officers Bender and Persinger testified they observed Appellant had: red-glassy eyes, an alcohol odor on his breath and person, and swayed while standing. In addition, Officer Bender found a Solo cup in the center console with an empty Bacardi bottle next to it. Further, Appellant admitted to Officer Persinger he had been drinking. Officer Persinger also testified Appellant had failed each of the administered standardized field sobriety tests, which demonstrated Appellant had lost the normal use of his mental or physical faculties due to Appellant's consumption of alcohol. Hence, a rational trier of fact could have reasonably concluded that Appellant was intoxicated.

8

Appellant further claims the State failed to prove beyond a reasonable doubt the enhancement part of the offense, specifically there was an alcoholic beverage in the motor vehicle at the time of the DWI, and the alcoholic beverage was in Appellant's immediate possession. However, Appellant entered a plea of true to the enhancement of the DWI with an open container of alcohol. A defendant's plea of true to an enhancement paragraph provides legally and factually sufficient evidence to find the paragraph true beyond a reasonable doubt. *Magic v. State*, 217 S.W.3d 66, 70 (Tex.App.--Houston [1st Dist.] 2006, no pet.), *citing Wilson v. State,* 671 S.W.2d 524, 525 (Tex.Crim.App. 1984).

The evidence, viewed in the light most favorable to the verdict, is legally sufficient for a rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Appellant urges us to consider the fact that English is not his first language as the primary cause of his failure of the field sobriety tests, which resulted in his subsequent arrest. However, this is a factual determination that the jury resolved in favor of the prosecution, and we decline Appellant's request to reevaluate it and find the jury's verdict legally insufficient. *Dewberry*, 4 S.W.3d at 740. To do so would be to ignore the obvious signs of intoxication Officers Persinger and Rock observed, driving erratically, red glassy eyes, smell of alcohol on Appellant's breath and person, empty bottle of Barcardi on the front console, and Appellant's conflicting admission he had consumed a bottle and a half of rum, a cup and a half, and a pint of Bacardi rum and coke. We find there is sufficient evidence in the record for a reasonable person to have found every single element of the offense beyond a reasonable doubt.

Point of Error One is overruled.

## II.    Motion to Suppress

In Point of Error Two, Appellant argues the trial court abused its discretion by denying his motion to suppress. First, Appellant maintains his warrantless arrest was not valid because the stop was pretextual. He argues Officer Rock's justification that Appellant had committed a traffic violation is insufficient to support the stop. Second, Appellant argues the probable cause is insufficient for his arrest in his view because his arrest was based solely on his failure to adequately perform the field sobriety tests. Appellant alleges his failure to perform was solely the result of his inability to understand English and not the result of intoxication.

*Standard of Review*

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex.Crim.App. 2010); *State v. Mechler*, 153 S.W.3d 435, 438-39 (Tex.Crim.App. 2005). The trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007). To review a motion to suppress ruling, we apply a bifurcated standard of review. *Wilson v. State*, 311 S.W.3d 452, 457-58 (Tex.Crim.App. 2010). Under this standard, we defer to the trial court's determinations of historical facts, if supported by the record. *Wade v. State*, 422 S.W.3d 661, 666 (Tex.Crim.App. 2013). We review *de novo* the court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458. In mixed questions of law and fact, if the resolution of those questions depends on an evaluation of credibility and demeanor we give almost total deference to the ruling. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex.Crim.App. 2011). However, if the resolution of those questions is not dependent on an evaluation of credibility and demeanor, we review *de novo*. *Id.* All purely legal questions are reviewed *de novo*. *Id.*

10

### A. *Pretextual Stop*

*Applicable Law*

The Fourth Amendment protects citizens against unreasonable searches and seizures at the hands of governmental officials. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). Government officials can make investigative detentions, however, they must have reasonable suspicion founded on "specific, articulable facts that, when combined with rational inferences from those facts, would lead [the officer] to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Castro v. State*, 227 S.W.3d 737, 741 (Tex.Crim.App. 2007); *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968). The articulable facts must provide more than a "mere inarticulate hunch" that a particular crime was in progress. *Williams v. State*, 621 S.W.2d 609, 612 (Tex.Crim.App. 1981). Reasonable suspicion is an objective standard, the court looks at the facts available to the officer at the time of the detention. *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App. 1997).

The officer making the stop does not need to observe firsthand the facts that justify the stop on reasonable suspicion when those facts may come from someone not associated with law enforcement. *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Brother v. State*, 166 S.W.3d 255, 257 (Tex.Crim.App. 2005). An informant's detailed description of the alleged wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight. *Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). "[I]nformation provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable." *Derichsweiler v. State*, 348 S.W.3d 906, 914-15

(Tex.Crim.App. 2011). If the law enforcement officer corroborates any information provided by the informant it increases the reliability of the information. *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.--Fort Worth 1995, pet. ref'd). Corroboration refers to whether the police officer, considering the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified. *Id.*

We understand this point of error to allege Officer Rock did not have sufficient specific articulable facts to conclude Appellant was engaged in a criminal activity. In other words, did Officer Rock have reasonable suspicion Appellant was driving while intoxicated?

*Analysis*

Officer Rock had reasonable suspicion to conduct an investigative detention of based on the 911 caller that reported a vehicle in I-35 driving recklessly. The 911 caller, Anthony Marcello, described a white Cadillac Escalade SUV driving northbound on I-35 passing 121 Lewisville, and provided real-time updates to the vehicle's location. Marcello stated the Escalade "almost side swiped" two people and could not stay in its lane. He also indicated the Escalade was varying its speed and he suspected the Escalade's driver of being intoxicated. Officers were dispatched where Marcello last saw the Escalade. Officer Rock was the first one to arrive in the area identified by Marcello, Rock spotted Appellant's vehicle, a white Cadillac Escalade SUV, which matched the vehicle description Marcello had reported as driving recklessly. Given the available facts, at the time to Officer Rock, a reasonable person would have concluded that there was enough reasonable suspicion to make an investigative detention of Appellant. Marcello's call along with the further corroboration by Officer Rock when he located Appellant gave Officer Rock "specific articulable facts that, when combined with rational inferences from those facts . . . [led] him to

12

reasonably conclude" that Appellant was driving while intoxicated.  *Castro*, 227 S.W.3d at 741.

Therefore, the detention of Appellant was justified.   Point of Error Two is overruled.

## B.  Illegal Arrest

*Analysis*

Appellant did not preserve the legality of Appellant's arrest for our review because the trial court was never given an opportunity to rule on it.   In Appellant's motion to suppress, Appellant argued the evidence should be suppressed because the arrest was "without probable cause to believe the accused was engaged in criminal activity."   Twice during trial, Appellant requested a ruling on his motion to suppress.   However, the record affirmatively shows Appellant requested a ruling on his motion to suppress the videotape evidence and the field sobriety tests solely based on his assertion that the language barrier prevented him from successfully performing the tests not any alleged intoxication.   Appellate Rule 33.1 is clear, to preserve error the trial court must (A) rule on the motion; or (B) refuse to rule on the motion.   TEX.R.APP.P. 33.1(a)(2).   Appellant did not request a ruling upon the legality of his arrest.   Therefore, Appellant lost his right to appeal the legality of the arrest.

Even had Appellant preserved his right to appeal, it would not be sufficient to overturn the ruling of the trial court.   In Point of Error Three, Appellant asserts his arrest was illegal because he could not communicate with the officers, and this alone was the sole cause of his poor performance in the field sobriety tests that subsequently led to his arrest.   However, in a motion to suppress, we review the trial court's ruling for an abuse of discretion.   *Crain*, 315 S.W.3d at 48; *Mechler*, 153 S.W.3d at 438-39.   We defer to the trial court's determinations of facts if they are supported by the record.   *Wade*, 422 S.W.3d at 666.   The trial court considered the testimony

13

of the officers, and video tape to support the denial of the suppression motion.

Point of Error Three is overruled.

### C. Pretrial Hearing

In Point of Error Four, Appellant contends he was denied due process because he was denied a suppression hearing prior to trial.

*Applicable Law*

Article 28.01 of the Texas Code of Criminal Procedure provides in pertinent part:

> Sec. 1. The court may set any criminal case for a pre-trial hearing before it is set for trial upon its merits, and direct the defendant and his attorney, if any of record, and the State's attorney, to appear before the court at the time and place stated in the court's order for a conference and hearing. The defendant must be present at the arraignment, and his presence is required during any pre-trial proceeding. The pre-trial hearing shall be to determine any of the following matters:
>
> .          .          .
>
> (6) Motion to suppress evidence . . . .

TEX.CODE CRIM.PROC.ANN. art. 28.01 (West 2006).

Article 28.01 of the Texas Code of Criminal Procedure does not mandate pretrial hearings, and the trial judge has discretion to either address and resolve pretrial motions prior to trial or carry a motion with the trial. If a trial court carries a motion to suppress with the trial, it may address the merits when, and if, the exclusion of evidence becomes an issue at trial. *Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App. 1988). Even if a pretrial motion to suppress is called to the attention of the trial court, no error is presented if the trial court, in its discretion, declines to hear the same. *Id.*; *Swanson v. State*, 447 S.W.2d 942, 943 (Tex.Crim.App. 1969).

*Analysis*

The trial court did not err in carrying the motion to suppress the evidence along with the trial. It was at the discretion of the trial court to either deny or grant the pretrial hearing. *Calloway*, 743 S.W.2d at 649. Appellant argues he was denied due process "when the Court would not allow a separate hearing prior to the trial unless he gave up his right to a jury trial." Nevertheless, Appellant fails to cite to the record to support this allegation, and our review has not uncovered any indicia the trial court made any such demand. Appellant mistakenly argues that the "Code of Criminal Procedure specifically provides for a separate hearing prior to trial for a suppression to be heard." Appellant disregards the clear language of Article 28.01 and the case law that support that the grant of a pretrial hearing lies within the sound discretion of the trial court. *Id.*; *Swanson*, 447 S.W.2d at 943. Therefore, the trial court did not err by conducting the suppression hearing during trial.

Point of Error Four is overruled.

## III.   Jury Charge

In Point of Error Five, Appellant claims that the trial court erred "by failing to" charge the jury on the suppression issues.

*Analysis*

Appellant did not preserve his right of appeal on this point of error. Appellant requested the trial court to include in the jury charge "something about probable cause to stop [Appellant]." The trial judge asked Appellant's counsel as to what exactly she wanted included in the jury charge, to which she replied "[j]ust what the law is on probable cause and the fact that, you know, a person--what the standard is." However, on appeal, Appellant claims that "the court erred by

15

failing to put in the court's charge language regarding the suppression." Further, Appellant claims that "[it] was clear that there was a communication barrier during the investigation."

To determine preservation of error under TEX.R.APP.P. 33.1, the issue is whether "the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal." *Martinez*, 91 S.W.3d at 336. We find a substantial difference between what Appellant requested during the charge conference and what he is complaining about on appeal. Hence, Appellant did not preserve his right to appeal on the jury charge issue because his complaint on appeal does not comport with the complaint raised on trial. *Id.*

Point of Error Five is overruled.

## CONCLUSION

For the foregoing reasons, we affirm.

February 14, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J. Not Participating

(Do Not Publish)

16